IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | Case No. 19-cr-00193-PWG-1 |
| v. | * | |
| | * | |
| | * | |
| BERNADETTE MBI FUO ATTIA | * | |
| | * | |
| | * | |
| Defendant | * | |

\*\*\*\*\*\*\*\*\*\*\*\*

## AMENDED MEMORANDUM OPINION AND ORDER OF COURT

This matter is before the Court on the defendant's Emergency Motion for Magistrate to Reconsider Detention Order in Light of CTF COVID-19 Crisis and Client's Asthma (the "Motion") (ECF No. 47), the government's Opposition to Defendant's Motion for Reconsideration of Detention Order (the "Opposition") (ECF No. 50), and the defendant's Reply to Response in Opposition to Emergency Motion for Magistrate to Reconsider Detention Order in Light of CTF COVID-19 Crisis and Client's Asthma. (the "Reply") (ECF. No. 52). The issues have been fully briefed, and no hearing is necessary. L.R. 105.6. For the reasons stated below, the Motion is **DENIED**.

I. PROCEDURAL HISTORY

On December 5, 2019, the Office of the United States Attorney filed a superseding information in this case charging the defendant with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349, and Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h). That same day she appeared before United States District Judge Paul W. Grimm and pled guilty to both charges. She is currently awaiting sentencing.

## II. STANDARD OF REVIEW

The release or detention of a defendant pending sentencing is governed by 18 U.S.C § 3143(a), which provides in relevant part:

> [T]he judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of a sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

18 U.S.C. § 3143(a)(1).

## III. ANALYSIS

On June 21, 2019, the Court conducted a detention hearing. At the end of the hearing, the Court found by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community if the defendant was released. The Court also found by a preponderance of the evidence that no condition or combination of conditions of release would reasonably assure the defendant's appearance as required. The Court thus ordered that the defendant be detained.

In making its ruling, the Court reviewed the factors outlined in 18 U.S.C. § 3142(g). The Court acknowledged that the offenses charged did not include any of the enumerated offenses under 18 U.S.C. § 3142(g)(1). The Court then concluded that the weight of the evidence against the defendant was strong. The government proffered that the defendant was directly involved in a fraud scheme in which she established a business and bank accounts using false identification information. The defendant deposited fraudulently obtained funds into the bank accounts and then withdrew the funds for the benefit of the conspiracy. In all, the conspiracy fraudulently

obtained in excess of $250,000. The government had surveillance video of the defendant making a fraudulent deposit of $145,000 using a fraudulent passport. Search warrants executed at the defendant's residence and on her email accounts yielded evidence of the fraud, including false identification documents and messages between the defendant and her co-conspirators. As mentioned above, the defendant ultimately pled guilty to the charges. *See* 18 U.S.C. § 3142(g)(2).

The third factor required the Court to consider the history and characteristics of the defendant. Here, the Court credited the defendant's representations that she has resided in the United States for 15 years and in the Maryland area for six years. She has family in the area. She has a work history. She does not have any physical or mental health issues, nor does she have any substance abuse issues. She has no criminal history. *See id.* § 3142(g)(3).

The fourth and final factor required the Court to consider the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. Here, the Court found that the defendant would pose an economic danger to the community if released. The defendant argued that any potential danger she posed would be mitigated if the Court released her on strict conditions of release (home detention with location monitoring, no access to the internet, etc.) to the third-party custody of a close friend. *See id.* § 3142(g)(4).

The Court determined, however, that even those significant restrictions were not enough to protect the community. The crimes committed by the defendant were perpetuated at least in part through the transmission of fraudulent emails and electronic transfer of funds. She communicated with co-conspirators through electronic media. The Court was not confident that a pretrial services officer would be able to adequately monitor the defendant's access to the internet if released with a condition that she be prohibited from doing so. In addition to finding

that there was no condition or conditions of release that would assure the safety of the community, the Court also found that the defendant was a risk of flight. The scheme involved the use of a fraudulent passport. Numerous articles of fraudulent identification documents were found in the defendant's residence. She allegedly has used an alias in the past to obtain travel documents.

In her present Motion, the defendant again requests release, now citing her asthma and migraines and her enhanced risk to exposure to COVID-19 because of her detention. She does not claim that she has contracted the virus or has been directly exposed to anyone that has been infected. She does not assert that her asthma and migraines have worsened because of her detention. Rather, she asserts that, if she would contract the virus, she is at a heightened risk of complications because of her asthma and migraines. In response, the government provides additional detailed information regarding the nature and extent of the conspiracy and the defendant's participation therein. *See* Opposition (ECF No. 50 at 5-8). The government proffers that the defendant personally obtained fraud proceeds totaling nearly $200,000 and that the actual loss to numerous victims reasonably foreseeable to the defendant was at least $935,000. *See* Opposition (ECF No. 50 at 5-6). The government also proffers that the defendant's primary co-conspirators remain at large and that one of them is an international fugitive. That individual has provided the defendant with personal identification information in the past. Further, the government notes that an ICE detainer is currently lodged against the defendant. *See* Opposition (ECF No. 50 at 10). Finally, the government highlights the measures taken by CTF to mitigate the spread of COVID-19. *See* Opposition (ECF No. 50 at 13-14).

As mentioned earlier, because the defendant has pled guilty and awaiting sentencing, there is a presumption of detention under 18 U.S.C. § 3143(a)(1). The defendant carries the

burden of proving by clear and convincing evidence that she is not likely to flee or pose a danger if released. Thus, the Court now considers the information proffered at the detention hearing and the new information proffered in the present pleadings and determines whether the defendant meets that burden of proof.

COVID-19 is a worldwide pandemic that has had a profound impact on the health and daily life of millions of people. In the recent case of *Coreas v. Bounds*, Civil Action No. TDC-20-0780, 2020 WL 1663133 (D. Md. Apr. 3, 2020), United States District Judge Theodore D. Chuang summarized the nature of the virus, the risks of exposure to it, and the steps employed by local governments and communities to curtail its spread:

> The virus identified as SARS-CoV-2, commonly referred to as the novel coronavirus ("the Coronavirus"), has caused a global pandemic of the condition known as COVID-19. As of April 3, 2020, there were 932,166 confirmed cases and 46,764 deaths worldwide. *Coronavirus Disease (COVID-19) Pandemic*, World Health Org., https://www.who.int/emergencies/diseases/novel-coronavirus-2019. As of April 2, 2020, there were 213,144 confirmed cases and 4,513 deaths in the United States. *Cases in U.S.*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html. The Centers for Disease Control and Prevention ("CDC") has projected that, without effective public health intervention, about 200 million people in the United States may contract the disease, and, under some projections, as many as 1.5 million people in the United States may die from the disease. Another organization's projection puts the potential number of American fatalities at 2.2 million. Moreover, some evidence suggests that, even when not fatal, COVID-19 results in long-term, serious illnesses, which may include severe damage to internal organs, in about 16 percent of cases.
>
> COVID-19 poses special risks for the elderly and those with certain preexisting medical conditions. *Amici Curiae* Public Health and Human Rights Experts Br. at 6-7, ECF No. 32. The CDC has identified several medical conditions that place an individual at an increased risk of serious COVID-19 complications: "blood disorders, chronic kidney or liver disease, compromised immune system, endocrine disorders, including diabetes, metabolic disorders, heart and lung disease, neurological[,] neurologic and neurodevelopmental conditions, and current or recent pregnancy." Greifinger Decl. ¶ 7, Reply Mot. TRO ("Reply") Ex. 6, ECF No. 52-6. Of those who have died from COVID-19 in Italy, another country experiencing a high number of COVID-19 cases, about three-fourths had high blood pressure, one-third had diabetes, and one-third had

> heart disease. According to Dr. Jonathan Louis Golob, an Assistant Professor at the University of Michigan School of Medicine, there is evidence that in the highest risk populations, COVID-19 causes death in about 15 percent of cases. Preliminary data from China has shown that 20 percent of COVID-19 cases involving high-risk categories have resulted in death.
>
> There is no vaccine, antiviral treatment, or cure for COVID-19. The Coronavirus is believed to spread through "droplets" that can be transmitted during close interpersonal contact, though these droplets can also survive on surfaces for days and spread the disease even absent such close contact. *Id.* ¶ 21. There is some evidence that individuals with the Coronavirus can transmit it to others even when they are not yet symptomatic. Public health measures aiming to stop the spread of the virus—most notably the practice of social distancing—have been widespread: "[s]chools, courts, collegiate and professional sports, theater and other congregate settings have been closed," *id.* ¶ 8, and many states have issued mandatory social distancing polices. The Governor of Maryland issued a stay-at-home order on March 30, 2020. *See* Order of the Governor of the State of Maryland § II, No. 20-03-30-01 (Mar. 30, 2020), https://governor.maryland.gov/wp-content/uploads/2020/03/Gatherings-FOURTH-AMENDED-3.30.20.pdf. As of April 2, 2020, 40 states and the District of Columbia had issued stay-at-home or shelter-in-place orders. *See These States Have Implemented Stay-at-Home Orders*, CNN (Apr. 2, 2020), https://www.cnn.com/2020/03/23/us/coronavirus-which-states-stay-at-home-order-trnd/index.html.

*Coreas*, 2020 WL 1663133, at *1-2.

Judge Chuang also reviewed the vulnerabilities of persons detained in jails and detention facilities caused by COVID-19:

> Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19. First, even if these facilities suspend in-person visitation, the staff, contractors, and vendors working at the facilities can still introduce the Coronavirus into the facility, a risk that is all the more difficult to contain because asymptomatic individuals can transmit the virus and because these facilities lack the capacity to screen for the virus in asymptomatic individuals. According to Petitioners' expert, Dr. Robert B. Greifinger, an expert on prison and jail health care and the former manager of medical care for the New York State prison system, "[j]ails and detention centers are congregate environments where the risk of infection and infectious spread are extraordinarily high." Greifinger Decl. ¶¶ 1-2, 16. Indeed, there have already been confirmed outbreaks of COVID-19 at several prisons and detention facilities across the United States, including the Rikers Island detention facility in New York City, the Cook County Jail in Chicago, Illinois, and the federal prison in Oakdale, Louisiana, as well as certain New Jersey jails housing ICE detainees. In this region, COVID-19 has been

> identified in the Clifton T. Perkins Hospital Center, a psychiatric hospital in Jessup, Maryland; and the D.C. Jail in Washington, D.C.
>
> Second, once the Coronavirus is introduced into a detention facility, the nature of these facilities makes the mitigation measures introduced elsewhere in the country difficult or impossible to implement. Detention facilities often lack personal protective equipment that helps prevent the transmission of the virus. Shared facilities, such as bathrooms, dining halls, and telephones, are often not disinfected between uses. Poor ventilation increases the risk of transmission. Detained individuals are often not given the opportunity or tools to wash or sanitize their hands frequently. And the crowded nature of the facilities can make social distancing recommended by the CDC impossible.

*Id.* at *2.

Notwithstanding the severity of the COVID-19 pandemic and the serious risk it poses to detainees as well as to the general public, the defendant fails to articulate how the fact that she suffers from asthma and migraines while detained at CTF establishes by clear and convincing evidence that she would not be a risk of flight or a danger to the community if released under 18 U.S.C. § 3142(b) or (c). Although the Court sympathizes with the defendant's situation and understands her desire to be released, the fact that she risks exposure to COVID-19 while detained has no bearing on whether she would flee or pose a danger if released. The defendant's physical condition is a factor that the Court must consider in determining whether to release or detain her, but it is just one factor. The Court reviewed and considered the other factors at the detention hearing and found that there was no condition or combination of conditions of release that would reasonably assure the safety of the community and the defendant's appearance as required. The defendant's asthma and migraines in combination with her present detention situation do not change those findings.

At the detention hearing the defendant recommended that the Court release her to the third-party custody of a friend, on 24-hour home detention with strict conditions, which could include restricting her from accessing the internet and using a computer, cell phone, or iPad.

7

Such a condition of release was possible several weeks ago, but it is not available today. Traditional home incarceration with location monitoring requires a probation officer to install a transmitter to the defendant's ankle. That practice, however, does not permit the probation officer to maintain an appropriate social distance, thereby potentially placing the probation officer and the defendant at a higher risk of transmitting the COVID-19 virus. As such, the United States Probation Office has suspended this traditional location monitoring and instead now employs other location monitoring techniques, including SmartLink, VoiceID, and Home Incarceration by Phone. These alternative technologies would not be sufficient in this case for two reasons. First, they would not monitor the defendant's location in real time. Rather, they would determine the defendant's location on a periodic basis throughout the day. Second, these alternative technologies would require internet access at the defendant's residence. Therefore, the Court does not find by clear and convincing evidence that the defendant would neither flee nor pose a danger if released because there are no condition or combination of conditions of release available to assure that the defendant would appear as required and that she would not pose a danger. To be clear, even if the traditional 24-hour home detention with location monitoring were available today (which it is not), the Court would not release the defendant with that condition, as the Court finds that even that stringent condition would not reasonably assure the defendant's presence as required or the safety of the community.

Finally, although each case must be decided on its individual unique facts, the Court recognizes the many recent decisions by this Court denying requests for release from detainees with similar health conditions as the defendant. *See, e.g.*, *United States v. Williams,* Criminal Case No. PWG-19-0008, 2020 WL 1643662 (D. Md. Apr. 2, 2020) (asthma and allergies); *United States v. Murray,* Criminal Case No. GLR-19-0318, 2020 WL 1605215 (D. Md. Mar. 31,

2020) (asthma); *United States v. Smith*, Criminal Case No. TDC-19-0179, 2020 WL 1540510 (D. Md. Mar. 27, 2020) (asthma, heart surgery); *United States v. Martin*, Criminal Case No. PWG-19-140-13, 2020 WL 1274857 (D. Md. Mar. 17, 2020) (asthma, diabetes, high blood pressure, pain). Many of these detainees are housed at CTF with the defendant.

## ORDER

Accordingly, it is this 14th day of April 2020, hereby **ORDERED** that the defendant's Emergency Motion for Magistrate to Reconsider Detention Order in Light of CTF COVID-19 Crisis and Client's Asthma (ECF No. 47) IS **DENIED**.

Date: April 14, 2020                               /s/
                                                   Thomas M. DiGirolamo
                                                   United States Magistrate Judge