**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **v.** | * | **Case No.: 19-cr-193-PWG** |
| | * | |
| **BERNADETTE MBI FUO ATTIA,** | * | |
| | * | |
| **Defendant.** | * | |

*   *   *   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Bernadette Attia's ("Attia") motion for review of detention order.  Mot. for Review of Detention, ECF No. 55.  Attia seeks release from detention in light of the presence of detainees who have COVID-19 within the Correctional Treatment Facility ("CTF"), where she is currently detained, arguing that she is at heightened risk for complications from COVID-19 due to a history of asthma.  Def.'s Mem. 1, ECF No. 61.  The Government, however, opposes release because asthma does not put her at a heightened risk and because Attia is a danger to the community and a flight risk.  Gov. Opp'n 1-2, ECF No 64.  The issues have been fully briefed, and no hearing is necessary.  Loc. R. 105.6 (2018).  I agree with the Government and Attia's motion for review of detention order is denied.

**FACTUAL BACKGROUND**

On December 5, 2019, Attia pleaded guilty to conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).  Plea Agreement, ECF No. 43.  Attia previously has been ordered detained pending trial and, after pleading guilty, remained detained after requesting reconsideration in light of COVID-

19.  Order of Detention ("First Det. Order"), ECF No. 21; Mem. and Op. Denying Motion for Reconsideration ("Second Det. Order"), ECF No. 53.

Following a detention hearing held on June 21, 2019, Judge DiGirolamo ordered that Attia be detained because he found, by clear and convincing evidence, that no conditions of release will reasonably assure the safety of the community and because he found, by a preponderance of the evidence, that no conditions of release will reasonably assure the defendant's appearance as required.  First Det. Order 2.  Specifically, Judge DiGirolamo found that the weight of evidence against Attia was strong because there was evidence Attia was directly involved in the fraud scheme by setting up a fraudulent business and bank accounts via email, resulting in the theft of $250,000.  *Id.* at 3.  Further, he found that there was evidence that she used a counterfeit passport to further the fraud and that an executed search warrant on her home and email yielded fraudulent passports, drivers licenses, and credit cards.  Second Det. Order 2-3.  The court found that her release would pose a danger to the community (even if strict restrictions were imposed) because Attia's internet access would be difficult to monitor and the crimes Attia committed were perpetrated through email and electronic fund transfers while communicating with co-conspirators through electronic media.  *Id.*  Lastly, the court found that Attia was a flight risk because in perpetration of the fraud she committed, she procured fraudulent identification documents and has used an alias in the past to procure travel documents.  *Id.*

On April 1, 2020, Attia filed an emergency motion for reconsideration of the detention order in light of COVID-19.  Mot. for Recons., ECF No. 47.  Judge DiGirolamo again ordered Attia be detained.  Second Det. Order 9.  He concluded that his prior findings of Attia's likelihood of endangering the community and fleeing if released remain unchanged by her argument that because she suffers from asthma and migraines, she is at increased risk if she contracts COVID-

19.  *Id.* at 7.  Furthermore, he found that both of these conclusions are exacerbated by COVID-19 because the alternative technologies the United States Probation Office must now use to monitor released defendants, in lieu of ankle transmitters, do not monitor the defendant's location in real time and would not restrict Attia's internet access.  *Id.* at 8.  He held that her health condition is a factor to be considered, but that ultimately, detention is warranted.

Because Attia is now seeking release from detention, her motion is governed by the Bail Reform Act, 18 U.S.C. §§ 3141-3156 (2018).  Attia filed a motion to review Judge DiGirolamo's order, pursuant to 18 U.S.C. § 3145(b),  requesting temporary release pursuant to 18 U.S.C. 3142(i), and for release pursuant to 18 U.S.C. 3145(c).  Def.'s Mem. 5-6.

## STANDARD OF REVIEW

In considering an appeal of a magistrate judge's order of detention, the district court reviews the magistrate's order de novo.  *United States v. Stewart*, 19 F. App'x 46, 47 (4th Cir. 2001).  However, the district court need not conduct an additional evidentiary hearing and may base its decision on the original detention hearing and any additional evidence proffered by counsel.  *United States v. Williams*, 753 F.2d 329, 331 (4th Cir. 1985). I find that the record before me is fully sufficient to consider the issues de novo, and that no hearing is needed.

## DISCUSSION

Attia has requested that she be released pursuant to various sections of the Bail Reform Act.  Her motion largely focuses on her medical conditions and the dangers generally present at CTF.  Although this Court is sympathetic to her situation, she is a flight risk and would pose a danger to the community if released, and she has not established that her medical condition is either a compelling need or an exceptional circumstance requiring her release.  Therefore, as explained below, her motion is denied.

**Because Attia presents both a risk of flight and a danger to the community if released, 18 U.S.C. § 3143(a) compels her detention**

The release of a person pending sentencing is governed by 18 U.S.C. § 3143(a), which states:

> the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. 994 does not recommend a term of imprisonment, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c).

18 U.S.C. § 3143(a)(1). The defendant bears the burden to overcome the presumption of detention contained in the statute with clear and convincing evidence that she is neither a danger to the community nor a flight risk. The factors a court must consider in determining whether a defendant poses a danger to the community or a risk of nonappearance include: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and, (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

I agree with Judge DiGirolamo that Attia has not met her burden of showing by clear and convincing evidence that she would not pose a danger to the community or flee if released. The nature and circumstances of the offense charged are serious, and her role in the offenses was not minor. In the statement of facts attached to the plea agreement, Attia admitted to obtaining fraud proceeds of nearly $200,000, causing reasonably foreseeable loss to victims totaling $935,000. Statement of Facts, ECF No. 43-1. She participated in the fraud by falsely assuming the identities of numerous victims over the course of two years and opening bank accounts in their names so she could disburse the proceeds to her co-conspirators. *Id.* The weight of evidence against her is not subject to dispute, given that she pleaded guilty to conspiracy to commit wire fraud and conspiracy

4

to commit money laundering.  Plea Agreement.  Attia does not have a criminal history, but the details of her current crime illustrate her ability to flee if released.  As Judge DiGirolamo found and the statement of facts make clear, Attia's co-conspirators provided her with the fake identifications she used in furtherance of her crime, such as a temporary Maryland identification document that she used to book a domestic flight.  Flight Receipt 1, ECF No. 64-4.  These co-conspirators remain at large, and are capable of assisting her.  Gov. Opp'n 10.  Furthermore, the Government has proffered that Attia currently has an outstanding ICE detainer and an open asylum claim.  As the Government puts it:

> flight from prosecution would be an attractive option to Attia if she were released: she could at that point either (1) remain in the United States (possibly in ICE detention) pending her sentencing and asylum hearing whenever they may be; serve any remaining sentence for the federal crimes with which she has been charged and pled guilty; then be subject to deportation in light of her convictions; or, instead, (2) reconnect with her coconspirators who would be motivated to have her out of the United States

Gov. Opp'n 11.  Although the ICE detainer is not dispositive, it is relevant to the analysis under the Bail Reform Act. *United States v. Suastengui*, 2018 WL 3715765, at *5 (W.D.Va. Aug 3, 2018) (holding that a court may not categorically deny bail based solely on the prospect of deportation, it is relevant to determining whether a defendant is a flight risk).

However, she has not established by clear and convincing evidence that she does not also have a substantial incentive to flee.  And, as outlined by the Government, she has both the capability and incentive to flee if released.  Lastly, the nature and seriousness of the danger to any person or the community that would be posed by Attia's release is substantial for the reasons outlined by Judge DiGirolamo.  The crimes Attia committed were largely perpetrated online, and limiting her access

to the internet if released is not possible because the United States Probation Office would not be able to use the alternative monitoring technologies without internet in her home.  Second Det. Order 7-8.

### Attia's risk of contracting COVID-19 does not present a compelling need that justifies temporary release under 18 U.S.C. § 3142(i)

Attia also has requested temporary release pursuant to 18 U.S.C. § 3142(i). Notwithstanding the directive in 18 U.S.C. § 3143(a)(1), 18 U.S.C. § 3142(i) permits "the temporary release of the person, in the custody of a United States marshal or other appropriate person, to the extent that the judicial officer determines such release to be necessary for the preparation of the person's defense of for another compelling reason."  A defendant may establish that they should be temporarily released because COVID-19 presents a "compelling need."  The factors to be considered in this analysis are: "(1) the original grounds for detention; (2) the specificity of a defendant's COVID-19 concerns; (3) the extent to which the proposed release plan is designed to mitigate or exacerbate other COVID-19 risks to the defendant; and, (4) the likelihood that a defendant's release would increase the COVID-19 risks to others."  *United States v. Jason Lawrence Green*, No. 1:19-CR-00539-CCB-1, 2020 WL 1873967 (D. Md. Apr. 15, 2020); *see also United States v. Clark*, 2020 WL 1446895 (D. Kan. March 25, 2020).  The court is required to consider whether the risk that COVID-19 poses to the defendant rises to the level of "compelling need," balanced against the other Bail Reform factors.  *United States v. Creek*, No. 20-4251, Doc. 18 (4th Cir. Apr. 15, 2020).

Here, COVID-19 does not present a compelling need that justifies Attia's temporary release.  First, the original grounds for detention, as outlined above, are compelling and COVID-19 has exacerbated the risk to the community posed by Attia's release.  Second, Attia's sole existing medical condition, asthma, does not compel her release.  Attia argues that because the

Center for Disease Control and Prevention warns that "[p]eople with moderate to severe asthma may be at higher risk of getting very sick from COVID-19," her medical condition presents a risk to her that outweighs the risk to the community if she were to be released.  Def.'s Mem. 2 n.2; Center for Disease Control and Prevention, *Coronavirus Disease 2019 (COVID-19); People with Moderate to Severe Asthma*, cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last reviewed April 2, 2020).  However, Attia's medical records do not support the conclusion that her asthma is moderate or severe and Attia has denied suffering respiratory issues in every medical visit since she has been detained except during the most recent visit on April 4, 2020, when Attia complained of chest pain and received a refill for her inhaler.  Gov. Opp'n 14; Attia Medical Records 6, 25-26, 53-43, 106-08, 132-33,  ECF No. 64-8.  Attia argues she has been exposed to inmates and staff at CTF and requested that she be given a coronavirus test during her medical visit on April 4, but was not given one.  Def.'s Mem. 1.  However, Attia does not now argue that she has contracted the virus and her medical records indicate that she "denied exposure to known COVID-19 case" and denied experiencing cough, fever, chills, headache, chest pain, and wheezing.  Attia Medical Records 7.  Because Attia does not have moderate to severe asthma, and has not argued that she has come into contact with a known coronavirus case, COVID-19 does not pose particularly compelling risk to Attia.

Attia also argues the conditions of her confinement at CTF put her at heightened risk, citing Judge Kollar-Kotelly's opinion in *Banks v. Booth*, No. 20-cv-00849, Dkt. 49 (D.D.C. April 19, 2020) for support.  In that opinion, Judge Kollar-Kotelly made specific findings as to the conditions at BOP facilities and ordered remedies to cure those deficiencies including: proper triaging for sick calls, proper cell restrictions, proper use of staff regarding use of PPE, etc.  *Id.* at 27-31.  Since then, the conditions at CTF have improved, such as inmates' increased access to medical care who

are in isolation and quarantine and increased access to cleaning supplies and equipment. Transcript of Telephone Conference Before the Honorable Colleen Kollar-Kotelly ("Transcript") 8, 16-18, 20-27, 40-43, ECF No. 64-9 (detailing the updated findings of monitors who were appointed to assess the conditions at BOP facilities). Furthermore, absent particularized medical concerns, it is improper to order the release of a defendant who poses a flight risk and danger to the community if release is based solely upon the general conditions of the facility where the defendant is detained. *See United States v. Cleckley*, TDC-18-344, ECF No. 485 at 4 (D. Md. Apr 8, 2020) ("If the conditions prove to be unacceptable, the solution for [the defendant] will be for the Court to require improvements to the conditions or to have him moved to another detention facility, not to order [the defendant] to be released into the community.").

Third, even if Attia had established that her particular medical condition put her at a heightened risk if she contracted COVID-19, her proposed release plan is unlikely to mitigate the risk of COVID-19 infection. The rate of infection at CTF peaked on April 5 and began to decline on April 16. Transcript 13. As of May 7, only four detainees were COVID-positive and all were housed in the infirmary. *Id.* at 8-9. Because Attia is a flight risk, if she were to be released into the custody of a third party, she could come into contact with the virus because the risk of infection in the D.C. metropolitan area is uncertain. By contrast, CTF will remain closed and under review as ordered by the court in *Banks*. Therefore, the risk that COVID-19 poses to Attia does not rise to the level of "compelling need," balanced against the other Bail Reform factors.

### Attia's risk of contracting COVID-19 does not present exceptional circumstances that justifies release under 18 U.S.C. § 3145(c)

Lastly, notwithstanding the mandatory detention required by 18 U.S.C. § 3243(a), Section 3145(c) provides an alternative basis for pre-sentencing release under exceptional circumstances. "In short, to obtain release under § 3145(c) pending sentencing, a prisoner (1) must demonstrate

by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of others; and (2) clearly show that there are 'exceptional reasons' justifying his release." *United States v. Ashley*, No. RDB-06-0034, 2020 WL 1675994, at *3 (D. Md. Apr. 6, 2020) (citing *United States v. Mahabir*, 858 F. Supp. 504, 506 (D. Md. 1994)).  Courts have held that COVID-19 may constitute an exceptional reason under 18 U.S.C. § 3415(c).  *United States v. Keaton*, No. 8:18-cr-00215-TDC, ECF No. 84 at 2 (D. Md. Apr. 23, 2020).  However, Attia, as explained above, did not present by clear and convincing evidence that she is neither a flight risk nor a danger to the community if released and is therefore not a candidate for release pursuant to 18 U.S.C. § 3145(c).

## **CONCLUSION**

In sum, Attia has not met her burden of establishing by clear and convincing evidence that she is neither a flight risk nor a danger to the community if released.  Additionally, the risk presented to her by COVID-19 is not outweighed by the risks to the community if she were to be released.  For those reasons, release pursuant to 18 U.S.C. §§ 3142(i), 3145(b), 3142(c), is inappropriate.

## **ORDER**

Accordingly, on this twenty-first day of May, Attia's  motion for review of detention order, ECF No. 55, IS DENIED.

_____/S/_____
Paul W. Grimm
United States District Judge